# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA RYAN, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORY, INC., and corporation; COMPREHENSIVE HEALTH, a corporation; and DOES 1–50, inclusive,<br><br>    Defendants. | Case No.: 22-CV-1687 TWR (KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>(ECF Nos. 6, 16) |

Presently before the Court are the Motions to Dismiss filed by Defendants LabOne LLC d/b/a Quest Diagnostics ("Quest")[1] ("Quest MTD," ECF No. 6) and Acuity-CHS, LLC f/k/a Comprehensive Health Services, LLC ("CHS")[2] ("CHS MTD," ECF No. 16) (together, the "Motions"), as well as Plaintiff Rebecca Ryan's Responses in Opposition to ("Quest Opp'n," ECF No. 10; "CHS Opp'n," ECF No. 21) and Defendants' Replies in Support of ("Quest Reply," ECF No. 13; "CHS Reply," ECF No. 22) the Motions. The

---

[1] Erroneously sued as Quest Clinical Laboratories, Inc.

[2] Erroneously sued as Comprehensive Health Services, Inc.

Court held a hearing on July 6, 2023.  (*See* ECF No. 26.)  Having carefully considered Plaintiff's Complaint ("Compl.," ECF No. 1 at 12–17[3]), the Parties' arguments, and the relevant law, the Court **GRANTS IN PART** and **DENIES IN PART** the Motions, as follows.

## BACKGROUND[4]

Plaintiff Rebecca Ryan began working as a Border Patrol Agent with the United States Customs and Border Patrol ("CBP") on June 16, 2019.  (*See* Compl. ¶¶ 8–9.)  Defendants Quest and CHS contracted with CBP to provide random drug tests of CBP employees.  (*See id.* ¶ 11.)

On January 19, 2022, Plaintiff submitted to a random drug test as part of CBP's Drug-Free Workplace Program by providing a urine specimen to Quest.  (*See id.* ¶¶ 11–12.)  On January 29, 2022, Quest certified that Plaintiff's urine sample had tested positive for tetrahydrocannabinolic acid ("THCA"), a cannabinoid found in marijuana.  (*See id.* ¶ 13.)

On February 2, 2022, Abram Laue, a Watch Commander with the CBP, instructed Plaintiff to contact a medical review officer ("MRO") with CHS.  (*See id.* ¶ 14.)  Plaintiff therefore contacted Dr. Naila Rahman, who initially referred to Plaintiff by the wrong name, Rachel Diaz, and informed her that she had tested positive for marijuana.  (*See id.* ¶ 15.)  Although Plaintiff corrected Dr. Rahman, Dr. Rahman insisted that she had tested positive.  (*See id.*)  Plaintiff was "shocked" because she had not used any form of marijuana while employed by the CBP.  (*See id.*; *see also id.* ¶ 10.)  Dr. Rahman failed to follow Defendants' policies and procedures during the call by "fail[ing] to confirm Plaintiff's identity . . . , fail[ing] to explain the verification process, fail[ing] to ask about potential

---

[3] Pin citations to ECF No. 1 refer to the CM/ECF pagination electronically stamped in the top, right-hand corner of each page.

[4] For purposes of the Motions, the facts alleged in Plaintiff's Complaint are accepted as true.  *See Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

sources of the alleged positive drug test, and fail[ing] to inform Plaintiff that she had 72 hours to request a second analysis." (*See id.* ¶ 17.) Plaintiff also requested that she be allowed to provide a new specimen to be tested because she believed that a mistake had been made, but Dr. Rahman refused. (*See id.* ¶ 16.) Plaintiff believes that Defendants have allowed other CBP agents to submit new specimens where there have been disputes concerning drug testing results. (*See id.* ¶ 20.)

After waiting on hold with CHS for three hours, Plaintiff spoke with Chris Garrett, also an employee of CHS, who ordered a test of a portion of her urine sample that had been reserved from the specimen that had already been tested and attributed to Plaintiff. (*See id.* ¶ 18.)

Also on February 2, 2022, because Plaintiff did not trust the second specimen that CHS was testing to be a true specimen of her urine, (*see id.* ¶ 21), Plaintiff attempted to call a Quest facility in San Diego four times to schedule a new drug test, but she was unable to book a testing appointment. (*See id.* ¶ 19.) Plaintiff therefore went to a Sharp Rees-Stealy medical facility in La Mesa, California, and paid out-of-pocket for two drug tests of her hair and urine. (*See id.* ¶ 21.) That testing yielded a negative result. (*See id.*)

On February 3, 2022, the CBP placed Plaintiff on administrative leave with non-duty pay. (*See id.* ¶ 22.) On March 2, 2022, the CBP proposed to remove Plaintiff from her position, (*see id.* ¶ 23), and it terminated her on August 1, 2022. (*See id.* ¶ 24.)

Plaintiff filed her Complaint, asserting a single cause of action for negligence against Defendants Quest and CHS, in the Superior Court of California, County of San Diego, on September 27, 2022. (*See generally* Compl.) Plaintiff contends that, as a result of Defendants' actions, she has suffered "damages, including but not limited to, lost employment, lost income and benefits, irreparable damage to her reputation and ability to earn a living or continue on in her career in law enforcement, emotional distress, humiliation, embarrassment, anxiety, fear, shame, shock, mental pain, suffering and anguish." (*See id.* ¶ 30.) Plaintiff also seeks punitive damages. (*See id.* ¶ 31; *see also id.* Prayer ¶ 3.)

Quest removed to this Court on the basis of diversity jurisdiction.  (*See generally* ECF No. 1.)  Quest filed its Motion on November 4, 2022, (*see generally* ECF No. 6), and CHS filed its Motion on February 21, 2022.  (*See generally* ECF No. 16.)

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

|   |   |
|---|---|
| 1 | "If a complaint is dismissed for failure to state a claim, leave to amend should be |
| 2 | granted 'unless the court determines that the allegation of other facts consistent with the |
| 3 | challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight* |
| 4 | *Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well* |
| 5 | *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in |
| 6 | denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton* |
| 7 | *Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)). |

## ANALYSIS

Plaintiff asserts a single cause of action for negligence. (*See generally* Compl. ¶¶ 25–31.) To state a claim for negligence, Plaintiff must allege (1) duty, (2) breach of duty, (3) causation, and (4) damages. *See Regents of Univ. of Cal. v. Super. Ct.*, 4 Cal. 5th 607, 618 (2018) (citing *Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1250 (2009)). Through the instant Motions, Defendants Quest and CHS each seek dismissal of Plaintiff's negligence cause of action.

### I. Quest's Motion to Dismiss

Quest argues that Plaintiff's negligence claim must be dismissed for the following reasons: (1) Plaintiff has not alleged that Quest violated federal law when it reported her test result, (*see* Quest MTD at 4–6); (2) Quest owes Plaintiff no duty for CBP's collection of her specimen, (*see id.* at 6–7); (3) Quest owes Plaintiff no duty for CHS's conduct, (*see id.* at 7–9); (4) Plaintiff cannot recover emotional distress damages, (*see id.* at 9–10); (5) Plaintiff cannot recover reputational damages, (*see id.* at 10–12); and (6) Plaintiff cannot recover punitive damages. (*See id.* at 12–13.)

#### A. *Mandatory Guidelines*

Quest's first argument is that Plaintiff fails to state a claim because she "does not allege Quest Diagnostics failed to comply with the [U.S. Department of Health and Human Services ("HHS")] Mandatory Guidelines [for Federal Workplace Drug Testing Programs ("Mandatory Guidelines"), 82 Fed. Reg. 7920, 7938 (Jan. 23, 2017),] that governed its testing and it is undisputed that its marijuana-positive test results were accurate, as

confirmed by a second laboratory." (*See* Quest MTD at 5.) At this stage of the proceedings, however, the Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (citing *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008)). Accordingly, it is not "undisputed that its marijuana-positive test results were accurate, as confirmed by a second laboratory." (*See* Quest MTD at 5.)

To the extent Quest contends that the Mandatory Guidelines preempt state tort law, (*compare* Quest MTD at 5–6 ("Ryan has not alleged that Quest Diagnostics violated the Mandatory Guidelines, and she may not seek to impose additional, inconsistent requirements on Quest Diagnostics under California law." (citing *Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 65 (2d Cir. 2006))), *with* Quest Reply at 3 ("Quest Diagnostics does not argue that Ryan's failure to allege a violation of the Mandatory Guidelines is dispositive of her negligence claim.")), Quest cites no binding authority to support its position. (*See generally* Quest MTD at 4–6.) The Ninth Circuit has recognized three ways in which federal law may preempt state law. *See Silvas*, 514 F.3d at 1004. First, there is express preemption, where Congress has explicitly stated that federal law preempts state law. *See id.* (quoting *Bank of Am. v. City & Cnty. of S.F.*, 309 F.3d 551, 558 (9th Cir. 2002)). Additionally, there also are two ways in which federal law may impliedly preempt state law. *See id.* (quoting *Bank of Am.*, 309 F.3d at 558). The first, field preemption, "may be inferred when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *See id.* (quoting *Bank of Am.*, 309 F.3d at 558). The second, conflict preemption, "arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See id.* (quoting *Bank of Am.*, 309 F.3d at 558).

Quest fails to demonstrate that any of these types of preemption bar Plaintiff's common law negligence claim. First, Quest conceded at oral argument that there is no

1  field preemption. Second, there can be no express preemption here because the Mandatory
2  Guidelines themselves report that the Secretary of HHS "determined that the [Mandatory]
3  Guidelines [did] not contain policies that have federalism implications." 82 Fed. Reg. at
4  7932. Finally, as for conflict preemption, Quest asserts in its Reply that Plaintiff "must
5  allege facts supporting a claim of some type of negligent conduct by Quest . . . [that]
6  necessarily cannot be conduct that is explicitly or implicitly proscribed by the Mandatory
7  Guidelines." (*See* Reply at 3.) According to Quest, because "[i]t is undisputed that . . .
8  [r]e-testing of Bottle B by a separate HHS-certified laboratory confirmed the accuracy of
9  the test result reported [by Quest] for Ryan's Bottle A specimen[, i]t is therefore incumbent
10 on Ryan to allege facts that support a claim of negligence by Quest Diagnostics in its testing
11 for a laboratory result that has been confirmed as positive by a second laboratory." (*See*
12 Quest Reply at 4.) As discussed above, however, *see supra* at pages 5–6, Plaintiff does not
13 allege that Quest's positive result was confirmed by a second laboratory, (*see generally*
14 Compl.), and, viewing the facts alleged and drawing all reasonable inferences in Plaintiff's
15 favor—as it must at this stage—the Court cannot conclude that Plaintiff fails to state a
16 claim because Quest complied with the Mandatory Guidelines.

17       Although Quest does not deny that, under California law, "laboratories have a duty
18 to individuals whose specimens they test," see *Quisenberry v. Compass Vision, Inc.*, 618
19 F. Supp. 2d 1223, 1230 (S.D. Cal. 2007); (*see also* Quest Reply at 4), Quest contends that
20 Plaintiff failed to allege that Quest owes Plaintiff "a general duty of care to accurately test."
21 (*See* Quest Reply at 4.) A review of Plaintiff's Complaint, however, reveals that her claims
22 for negligence against Quest are based on Quest's testing of her urine sample and
23 certification of the results, (*see* Compl. ¶ 13), and the "failure to properly train its staff that
24 conducted Plaintiff's testing and failure to implement or follow proper procedures that
25 would have ensured the accuracy of the drug test." (*See id.* ¶ 28.) Plaintiff contends that
26 "[i]t is reasonable to infer from [her] allegations that . . . Quest's positive test result was
27 the product of an error in Quest's testing." (*See* Quest Opp'n at 10.) At this stage of the
28 proceedings, the Court agrees. Accordingly, the Court **DENIES IN PART** Quest's Motion

to Dismiss to the extent it seeks a determination that Plaintiff fails to allege that Quest owed her a duty of care in testing her urine specimen.

### B.     Duty of Care

Quest's second and third arguments contend that Quest does not owe Plaintiff a duty of care with respect to the CBP's and CHS's conduct. (*See* Quest MTD at 6–9.) Specifically, Quest contends that it owes Plaintiff no duty with respect to the CBP's collection of Plaintiff's urine specimen, (*see id.* at 6–7), or CHS's conduct during its verification interview. (*See id.* at 7–9.)

As for the CBP, Plaintiff notes that, contrary to Quest's argument, she does not allege that the CBP collected her urine specimen, but rather that she "submitted to a random drug test by providing a urine specimen to Quest." (*See* Quest Opp'n at 8–9 (quoting Compl. ¶ 12).) Plaintiff also, however, does not allege that Quest collected her specimen. As the Ninth Circuit has recognized, "the complaint must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *In re Cent. Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Here, Plaintiff's allegations are consistent with her specimen being collected by either the CBP or Quest, meaning they "remain stuck in 'neutral territory'" and do not meet the plausibility standard. *See id.* at 1108 (quoting *Twombly*, 550 U.S. at 557). The Court therefore concludes that Plaintiff fails plausibly to allege that Quest owed her a duty of care with respect to the collection of her urine specimen and **GRANTS IN PART** Quest's Motion to Dismiss as to that claim.

Turning to CHS, Plaintiff contends that she "has alleged that each defendant acted as agents of the others and, as a result, has alleged that Quest is liable for the conduct of the MRO – regardless of which defendant the MRO worked for." (*See* Quest Opp'n at 9–10.) Plaintiff's allegations in this respect are limited to the following:

> 5.     Plaintiff is informed and believes an thereon alleges that at all times herein mentioned each of the Defendants, including all Defendants sued under fictitious names, was the agent, employee, partner, joint venture, officer, director, controlling shareholder, subsidiary, affiliate, parent

>corporation, successor in interest and/or predecessor in interest of some or all of each of the remaining Defendant, and in doing the things hereinafter alleged, was acting within the course and scope of that agency, employment, or other relationship and with the permission and consent of the other Defendants, so as to be liable for their conduct . . . .
>
>6. Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted pursuant to and with[in] the scope of the relationships alleged above, that each Defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, and aided and abetted the conduct of the other Defendants.

(*See* Compl. ¶ 5.) The Court agrees with Quest that these arguments are conclusory because Plaintiff does "not allege any facts suggesting that [Quest] maintained control over [CHS]'s actions, or vice versa." *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1215 (9th Cir. 2016). Accordingly, the Court **GRANTS IN PART** Quest's Motion to Dismiss to the extent Plaintiff contends that Quest owes a duty of care to Plaintiff for the actions taken by CHS and/or its employees.

### C. *Emotional Distress Damages*

Regarding Quest's fourth argument, under California law, "[r]ecovery of emotional distress damages has been allowed, absent impact or physical injury, in certain specialized classes of cases. Where the negligence is of a type which will cause highly unusual as well as predictable emotional distress, recovery has been allowed[.]" *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 484 (2003) (quoting *Allen v. Jones*, 104 Cal. App. 3d 207, 215 (1980)). Quest argues that "[i]t is undisputed that Ryan did not suffer any physical injury" and that this is not the sort of case in which emotional distress damages can be recovered. (*See* Quest MTD at 9–10.)

The Court finds persuasive the Honorable Roger T. Benitez's analysis in *Quisenberry*, in which the plaintiff nurse filed suit against a laboratory for reporting that she had tested positive for alcohol use, leading to suspension from her job and possible revocation of her nursing license. *See* 618 F. Supp. 2d at 1225–26. Judge Benitez dismissed the plaintiff's claim for negligent infliction of emotional distress, distinguishing

the plaintiff's case from that of a patient who had erroneously been reported HIV-positive, who "would not know for sure whether her diagnosis [wa]s erroneous, and . . . would most likely assume that she [wa]s suffering from a serious or a life-threatening illness." *See id.* at 1231. A patient who erroneously was reported to have consumed alcohol, on the other hand, "[wa]s unlikely to suffer highly unusual emotional distress" because the results "[we]re not likely to suggest . . . a serious of life-threatening health condition" and "an individual would know with certainty whether she had, in fact, been drinking and thus . . . would immediately recognize that the lab results are erroneous." *See id.*

As in *Quisenberry*, Plaintiff has not alleged that she is likely to suffer highly unusual emotional distress because the allegedly erroneous urine test did not suggest that Plaintiff had a serious or life-threatening condition and Plaintiff knew with certainty that the results were erroneous because she never used marijuana. *Cf. Gonzalez v. Compass Vision, Inc.*, No. 07-CV-1951-BEN (AJB), 2008 WL 11337934, at *5 (S.D. Cal. July 24, 2008) (permitting plaintiffs to seek emotional distress damages after defendant laboratory erroneously reported that they had tested positive for alcohol use when the plaintiffs alleged that they had "suffered a wide range of symptoms, including insomnia, depression, humiliation, severe apprehension, anxiety, and even hospitalization due to stress"). The Court therefore **GRANTS IN PART** Quest's Motion and **DISMISSES** Plaintiff's claim to the extent she alleges negligent infliction of emotional distress.

### D. Reputational Damages

Fifth, Quest contends that Plaintiff cannot recover reputational damages because the lab report is protected by the common-interest qualified privilege. (*See* Quest MTD at 10–12.) Plaintiff responds that she "has not asserted a claim for defamation, thus the common interest privilege is inapplicable" and, "[i]f it does apply, . . . [she] has adequately pleaded malice." (*See* Quest Opp'n at 12.) "Moreover, Ryan's claim for damages for reputational harm are not based on the *communication* of her test results[,]" but rather "on the allegations that the defendants negligently *conducted* her test in the first place, resulting in the incorrect test results." (*See id.* at 13 (emphasis in original).)

   Plaintiff cites no authority to support that she can seek "reputational damages" without asserting a claim for defamation. (*See generally* Quest Opp'n); *see also, e.g.*, Cal. Civ. Code § 44 ("Defamation is an invasion of the interest in reputation."); *Truck Ins. Exch. v. Bennett*, 53 Cal. App. 4th 75, 85 (1997) ("Defamation . . . injures a person's reputation."). Under California law, "[l]ibel is a false and unprivileged publication by writing, . . . which has a tendency to injure [any person] in his occupation." *See* Cal. Civ. Code § 45. "A privileged publication . . . is one made . . . [i]n a communication, without malice, to a person interested therein, . . . by one who is also interested." *See* Cal. Civ. Code § 47(c)(1). California courts have found that "[p]arties in a business or contractual relationship have the requisite 'common interest' for the privilege to apply." *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 440 (2007) (citing *Kashian v. Harriman*, 98 Cal.App.4th 892, 913, 930–931 (2002)).

   Quest contends that the Court must dismiss Plaintiff's defamation claim because "Quest Diagnostics . . . had a common business interest in reporting the drug testing results of Ryan's urine specimen to the MRO and its laboratory report was reasonably calculated to further that common interest." (*See* Quest MTD at 11 (citing *King*, 152 Cal. App. 4th at 440).) Privilege, however, "is an affirmative defense to a claim of defamation." *See Solarcity Corp. v. Doria*, No. 16CV3085-JAH (RBB), 2018 WL 2229397, at *6 (S.D. Cal. May 16, 2018) (citing *Beroiz v. Wahl*, 84 Cal. App. 4th 485, 492 (2000)). "Generally, affirmative defenses may not be considered in a motion to dismiss unless the existence of such affirmative defense is apparent on the face of the pleadings." *Id.* (citing *H & M Assocs. v. City of El Centro*, 109 Cal. App. 3d 399, 405 (1980)). "With respect to the question of the legal sufficiency of a complaint in a libel action, it appears to be well settled that where the existence of the privilege is disclosed on the face of the complaint, the privilege is available as a defense on [a motion to dismiss]." *Id.* (alteration in original) (quoting *Jackson v. Underwriters' Report*, 21 Cal. App. 2d 591, 593 (1937) (citing *Gosewisch v. Doran*, 161 Cal. 511, 516 (1911))).

/ / /

The question, therefore, is whether the common interest privilege is clear on the face of Plaintiff's Complaint. The Court concludes that it is. Here, Plaintiff alleges on information and belief that "Quest and CHS contracted with CBP to provide random drug tests of CBP employees as part of CBP's Drug-Free Workplace Program." (*See* Compl. ¶ 11.) Because the existence of the common interest privilege is evident from these allegations, Quest's transmission of its results is privileged unless Plaintiff sufficiently alleges that the results were reported with malice. *See Solarcity Corp.*, 2018 WL 2229397, at *6.

Plaintiff contends that she adequately pleads malice because malice only needs to be "alleged generally" under Federal Rule of Civil Procedure 9(b) and she alleges that "Defendant[s'] acts and omissions . . . were *despicable conduct* that were carried on by the Defendants with a *willful and conscious disregard of the rights or safety of Plaintiff*; and fraudulent." (*See* Quest Opp'n at 11 (quoting Fed. R. Civ. P. 9(b); Compl. ¶ 31 (emphasis in original)); *see also id.* at 12.) But "[t]he malice necessary to defeat a qualified privilege is *actual* malice[,] which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable ground for belief in the truth of the publication and thereafter acted in reckless disregard of the plaintiff's rights." *See Solarcity Corp.*, 2018 WL 2229397, at *6 (emphasis added) (quoting *Hawran v. Hixson*, 209 Cal. App. 4th 256, 288 (2012)). Contrary to Plaintiff's suggestion, "[g]eneral allegations of malice will not suffice[;] rather 'actual facts of malice must be alleged or be apparent from the communications themselves.'" *See id.* (quoting *Martin v. Kearney*, 51 Cal. App. 3d 309, 312 (1975)).

Such allegations are missing here. "Nothing in the complaint suggests that the statements were motivated by hatred or ill will, nor does [Plaintiff] allege the statements were made in reckless disregard of the truth." *See id.* The Court therefore concludes that Quest's report of Plaintiff's urine test results qualifies as privileged. Accordingly, the Court **GRANTS** Quest's Motion to Dismiss and **DISMISSES** Plaintiff's request for reputational damages.

### E. *Punitive Damages*

Finally, Quest argues that Plaintiff's request for punitive damages must be dismissed. (*See* Quest MTD at 12–13.) Under California law, a plaintiff may recover punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." *See* Cal. Civ. Code § 3294(a). An employer such as Quest, however, "shall not be liable for damages . . . based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." *See* Cal. Civ. Code § 3294(b). Further, with respect to a corporate employer such as Quest, "the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." *See id.*

Here, Plaintiff alleges only that "Defendants' acts and omissions . . . were despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of her rights; despicable conduct that were carried on by the Defendants with a willful and conscious disregard of the rights or safety of Plaintiff; and fraudulent." (*See* Compl. ¶ 31.) Because Plaintiff fails to allege that Quest meets the requirements for a corporate employer under California Civil Code section 3294(b), the Court **GRANTS** Quest's Motion and **DISMISSES** Plaintiff's request for punitive damages. *See, e.g., Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 817 (N.D. Cal. 2015) (dismissing request for punitive damages where, although "the Court is satisfied that [the plaintiff] has pleaded sufficient factual allegations, taken as true, that could constitute malice, fraud, or oppression, [the plaintiff] has failed to allege sufficient facts from which the Court can infer that these acts were ratified by an officer, director, or managing agent of [the defendant corporation], as required to state a claim for punitive damages" (footnote omitted)).

/ / /

/ / /

## II. CHS's Motion to Dismiss

CHS argues that Plaintiff's negligence cause of action must be dismissed on the following grounds: (1) Plaintiff inadequately pleads joint liability through agency or aiding and abetting theories, (*see* ECF No. 16-1 ("CHS Mem." at 7–10); (2) Plaintiff does not plausibly allege that CHS owed her a duty of care, (*see id.* at 11–12); (3) Plaintiff fails to allege that CHS or its employees breached any duty, (*see id.* at 12–14); (4) Plaintiff fails to allege that her damages are traceable to a breach of duty by CHS, (*see id.* at 14–16); (5) Plaintiff does not plead entitlement to emotional distress damages, (*see id.* at 16); and (6) Plaintiff fails to plead entitlement to punitive damages. (*See id.* at 16–17.) For the same reasons discussed above, *see supra* Sections I.C and E, the Court **GRANTS** CHS's Motion to Dismiss as to Plaintiff's claims for emotional distress and punitive damages. The Court addresses each of CHS's remaining arguments in turn.

### A. Joint Liability

CHS first argues that Plaintiff fails to allege sufficient facts to support an inference that an agency or aiding-and-abetting relationship existed between CHS and Quest. (*See* CHS Mem. at 7 (first citing *Emazing Lights, LLC v. De Oca*, No. SACV 15-1561-AG(Ex), 2016 WL 7507765, at *3 (C.D. Cal. June 20, 2016); then citing *Paskenta Band of Nomlaki Indians v. Crosby*, No. 2:15-cv-00538-MCE-CMK, 2016 WL 6094468, at *7 (E.D. Cal. Oct. 19, 2016), *aff'd sub nom. Paskenta Band of Nomlaki Indians v. Assoc. Pension Consultants, Inc.*, 854 F. App'x 872 (9th Cir. 2021)).) Citing only to the pleading standards articulated in *Twombly* and *Iqbal*, Plaintiff broadly contends—without further argument—that she "has adequately alleged agency between co-defendants." (*See* CHS Opp'n at 9 (emphasis omitted).) For the reasons discussed above, *see supra* Section I.B, the Court concludes that she does not. *See, e.g., Emazing Lights*, 2016 WL 7507765, at *3 (rejecting as "conclusory" and "lack[ing] the factual basis necessary to overcome a motion to dismiss" allegations that "each of defendants was the agent and employee of each of the other [d]efendants, and was at all times acting within the course and scope of such agency and employment, and with the knowledge and approval of each of the other [d]efendants"

(citing *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557))); *see also Paskenta Band*, 2016 WL 6094468, at *7 ("[A]iding and abetting liability under California law, as applied by the California state courts, requires a finding of actual knowledge, which requires more than a vague suspicion of wrongdoing. . . . [T]o satisfy the knowledge prong, [the plaintiffs must plausibly allege] the defendant . . . [had] actual knowledge of the specific primary wrong the defendant substantially assisted." (all but second alterations in original and internal quotation marks omitted) (quoting *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 & n.4 (9th Cir. 2006))). The Court therefore **GRANTS IN PART** CHS's Motion to the extent Plaintiff contends that CHS is liable to Plaintiff for the actions taken by Quest and/or its employees under an agency or aiding-and-abetting theory. Accordingly, the Court concludes that Plaintiff's negligence claim against CHS can be premised only on the actions that Plaintiff alleges CHS and its employees took, namely, Plaintiff's conversations with Dr. Rahman and Mr. Garrett on February 2, 2022. (*See* Compl. ¶¶ 15–18.)

### B. Duty of Care

CHS next argues that Plaintiff "has not plausibly alleged that CHS, in its limited role as the employer of the MRO, owed her any duty of care with respect to the collection, labeling and testing of her drug specimen." (*See* CHS Mem. at 11.) CHS also contends that, "as much as Ryan contends that CHS's duty imposes requirements beyond those found within the Mandatory Guidelines, her claim must fail for the reasons explained by Quest in its own motion to dismiss." (*See id.* at 11–12 (citing Quest MTD at 4–6 & n.10).)

For the same reasons discussed above, *see supra* Section I.A, the Court rejects CHS's preemption argument. Further, Plaintiff alleges that "Dr. Rahman failed to follow Defendants' policies and procedures" by, among other things, "fail[ing] to confirm Plaintiff's identify . . . , fail[ing] to explain the verification process, fail[ing] to ask about potential sources of the alleged positive drug test, and fail[ing] to inform Plaintiff that she had 72 hours to request a second analysis." (*See* Compl. ¶ 17.) Even if it were appropriate for the Court to consider the Mandatory Guidelines at this time, these "policies and procedures" appear consistent with the duties Plaintiff alleges. *See, e.g.*, 82 Fed. Reg. at

7962 § 13.5(d) ("When the HHS-certified laboratory reports a positive result for the primary (A) specimen, the MRO must contact the donor to determine if there is any legitimate medical explanation for the positive result."); 82 Fed. Reg. at 7964 § 13.8(b) ("The MRO must inform the donor that the donor has the opportunity to request a test of the split (B) specimen when the MRO informs the donor that a positive, adulterated, or (for urine) substituted result is being reported to the federal agency on the primary (A) specimen."). The Court therefore concludes that Plaintiff adequately alleges that CHS and its employees owed her a duty of care.

### C.   Breach

CHS also argues that Plaintiff "has not plausibly alleged that CHS or its employees breached any putative duty" because her "allegations elsewhere in the Complaint contradict [her] conclusory assertions" that Dr. Rahman failed to follow CHS's "policies and procedures" in certain ways. (*See* CHS Mem. at 12–13.) The Court, however, does not credit the supposed contradictions identified by CHS. The fact that CHS ordered a testing of Plaintiff's split specimen, for example, does not mean that Dr. Rahman informed Plaintiff that she had the right to request the testing. (*Compare* CHS Mem. at 13, *with* Compl. ¶¶ 17–18.) If anything, it appears that another of CHS's employees, Mr. Garrett, ordered the retest hours after Plaintiff spoke with Dr. Rahman. (*See* Compl. ¶ 18.) Further, Plaintiff's Complaint does not allege that "she informed Dr. Rahman that she disavowed . . . the positive test result" because "she affirmatively advised Dr. Rahman that she had used no form of marijuana, that a mistake had occurred with her specimen, and that she therefore wanted to provide a new specimen." (*Compare* CHS Mem. at 13–14, *with* Compl. ¶¶ 15–16.) Rather, Plaintiff alleges only that she "was shocked to hear the [positive] results," (*see id.* ¶ 15), and that she "requested that she be allowed to provide a new specimen to be tested because she believed a mistake had occurred with her specimen." (*See id.* ¶ 16.) For purposes of CHS's Motion, the Court therefore concludes that Plaintiff adequately alleges that CHS breached its duty of care to her.

/ / /

### D.     Causation

Finally, CHS contends that Plaintiff "cannot demonstrate causation, as her alleged damages are not traceable to any alleged breach of any duty owed by CHS." (*See* CHS Mem. at 14.) But if, for example, Dr. Rahman did "fail[] to confirm Plaintiff's identity" and therefore erroneously provided the results of another test subject, such as "Rachel Diaz," (*see* Compl. ¶¶ 15, 17), CHS's erroneous reporting of another subject's results could plausibly have caused Plaintiff's lost employment with the CBP. (*See id.* ¶¶ 22–24, 30.) The Court therefore concludes that Plaintiff adequately alleges causation as to CHS.

### CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** the Motions (ECF Nos. 6, 16). Specifically, the Court **GRANTS IN PART** Quest's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims for agency-based liability and requests for emotional distress, reputational, and punitive damages. For the same reasons, the Court **GRANTS IN PART** CHS's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims for joint liability and requests for emotional distress and punitive damages. The Court otherwise **DENIES** the Motions and **GRANTS** Plaintiff leave to file an amended complaint correcting the deficiencies identified herein within fourteen (14) days of the electronic docketing of this Order. *Should Plaintiff fail timely to amend her complaint, this action shall proceed as to Plaintiff's surviving negligence theories.*

**IT IS SO ORDERED.**

Dated: July 31, 2023

*[signature: Todd Robinson]*
Honorable Todd W. Robinson
United States District Judge